**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**ANTHONY LEONARD MYHAND,**

    **Plaintiff,**

**vs.**                        **Case No. 1:23-cv-22-MAF**

**MARTIN J. O'MALLEY,
Commissioner of Social Security[1],**

    **Defendant.**

_____/

## <u>MEMORANDUM OPINION AND ORDER</u>

This Social Security case was referred to the undersigned upon consent of the parties, ECF No. 8, by United States District Judge Allen C. Winsor. ECF No. 9. This cause is before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for Title VI Supplemental Security Income (SSI). After careful consideration of the record, for the reasons stated below, the decision of the Commissioner is AFFIRMED.

---

[1] Martin O'Malley was nominated by President Biden to be Commissioner of the Social Security Administration and was sworn into office December 20, 2023. <u>See</u> <u>https://www.ssa.gov/agency/commissioner/</u>. The Clerk is directed to correct the docket to reflect Defendant's name.

## I.      Procedural History

Plaintiff filed an application for Supplemental Security Income on December 28, 2020, alleging a date of disability of May 28, 2014. Tr. 75-76.[2] That application was denied initially on May 27, 2021, and on reconsideration on February 1, 2022. Tr. 91-92; 97-98. Plaintiff requested a hearing before an Administrative Law Judge (ALJ) on February 11, 2022. Tr. 132. A hearing was held on July 7, 2022, before ALJ Bernard Porter. Tr. 45-74. Plaintiff; his attorney, Anthony Caiker, Esq.; and a Vocational Expert (VE), Mark Pinti, appeared and participated. Plaintiff (Tr. 51-68; 72-73) and VE Pinti (Tr. 68-72) testified during that hearing. At hearing, Plaintiff amended his date of disability to December 28, 2020, the date of his application. Tr. 51. ALJ Porter entered his decision on August 18, 2022, concluding that Plaintiff was not disabled. Tr. 10-20. The Appeals Council denied review on December 19, 2022, rendering ALJ Porter's decision the final decision of the Commissioner. Tr. 1-6.

Through counsel, Plaintiff filed his complaint with this Court on February 1, 2023. ECF No. 1. The Commissioner filed a Response on April 28, 2023. ECF No. 12. Plaintiff filed a Memorandum in Support of his

---

[2] References to the record in this case will be to "Tr." followed by the relevant page number.

Complaint on July 3, 2023. ECF No. 14. The Commissioner filed a responsive memorandum in support of the Commissioner's position on July 27, 2023. ECF No. 15. This matter is ripe for review.

## II.    Issue Presented

In his Complaint and Memorandum in Support of that Complaint, Plaintiff presents the following issue for review:

> The ALJ's RFC determination lacks substantial evidence the ALJ failed to properly evaluate Plaintiff's subjective complaints pursuant to SSR 16-3p.

ECF No. 14, p. 1. As this is the only issue presented by Plaintiff in his Memorandum, the Court will limit its review of ALJ Porter's decision and record to these matters.

## III.   Legal Standards Guiding Judicial Review

Review of the Commissioner's decision is limited. <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1986). This Court must affirm the decision if it is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1221 (11th Cir. 2002); <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, 703 F.2d at 1239

(citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).[3]

The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). Review is deferential, but the reviewing court conducts "an independent review of the record." Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any

---

[3] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement); Barnhart v. Walton, 535 U.S. 212, 223-24 (2002).

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1.   Is the individual currently engaged in substantial gainful activity?

2.   Does the individual have any severe impairments?

3.   Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.   Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[4]

---

[4] An RFC is the most a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his limitations, observations by treating and examining physicians or other persons, and medical records. Id. The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); see Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term 'residual functional capacity assessment' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered his decision. See generally, Bagliere v. Colvin, No. 1:16-CV-109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), adopted, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

5.      Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant satisfies this burden of demonstrating he cannot do prior work, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g)). If the Commissioner carries this burden, the claimant must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim. See 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. As the finder of fact,

pursuant to 20 C.F.R. §§ 404.1502(a) and 404.1513(a)(2), the ALJ considers medical opinions from licensed physicians and psychologists and acceptable medical sources. The ALJ is charged with the duty to evaluate all the medical opinions of record and resolve conflicts that might appear. 20 C.F.R. § 404.1527.

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.3d 1221, 1223 (11th Cir. 1991)).

After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible; and that determination will be reviewed to determine if it is based on substantial evidence. Moreno v. Astrue, 366 F. App'x 23, 28 (11th Cir. 2010) (citing Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. [citations omitted]. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as

true." Wilson v. Barnhart, 284 F.3d at 1225. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995)). The court can rely on discrepancies in claimant's descriptions of daily life and claims of infirmity to evaluate the claimant's credibility. Moore, 405 F.3d 1208, 1212 (11th Cir. 2005) (the ALJ's negative credibility determination was based on the fact that Plaintiff could drive, provide childcare, bathe, take care of herself, and do housework).

Pursuant to the revised regulations applicable to claims filed on or after March 27, 2017, an ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017). The removal of the treating source rule is intended to "eliminate confusion about a hierarchy of medical sources and instead focus adjudication" on the evidence, as well as ensure that courts are not reweighing the evidence under the substantial evidence standard of review, which is intended to be a highly deferential standard. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017). The Eleventh Circuit has recognized that the "new regulatory scheme no longer requires the ALJ to either assign more

weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion." <u>Matos v. Comm'r of Soc. Sec.</u>, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022).

The ALJ must now determine the persuasiveness of medical opinions by considering supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 416.920c(c)(1)-(c)(5) (2017). Because supportability and consistency are the "most important" factors, the ALJ must articulate how these factors were considered for a medical source's opinions or prior administrative medical findings, but an ALJ is not required to articulate how the remaining factors were considered unless there are equally persuasive medical opinions or prior administrative medical findings as explained in 20 C.F.R. § 416.920c(b)(3). 20 C.F.R. § 416.920c(b)(2) (2017). The ALJ will consider one or more medical opinions or prior administrative medical findings from the same medical source together using the above factors; and the ALJ is not required to articulate how he or she considered each opinion or finding. 20 C.F.R. § 416.920c(b)(1) (2017).

The Commissioner's regulations do not require the ALJ to use any "magic language" or follow a particular formula when addressing the

supportability and consistency factors. See 20 C.F.R. § 416.920c(b)(2); Thaxton v. Kijakazi, No. 1:20-cv-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) ("[T]he ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record.") (citations omitted). Accordingly, the ALJ does not have to address the supportability and consistency factors through separate analyses as long as the analysis addresses the substance of both factors. See Alvarez v. Comm'r of Soc. Sec., No. 20-cv-24711-Bloom/Otazo-Reyes, 2022 WL 2092886, at *2 (S.D. Fla. June 10, 2022) (finding that the ALJ's simultaneous consideration supportability and consistency factors was not improper) (citing, inter alia, Thaxton, 2022 WL 983156, at *8); Rivera v. Kijakazi, No. 6:21-cv-93-AAS, 2022 WL 2965883, at *4 (M.D. Fla. July 27, 2022) ("The articulation requirement is met so long as the evaluation addresses the substance of the factors, regardless of the specific language used in the evaluation.") (citing Cook v. Comm'r of Soc. Sec., No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *5 (M.D. Fla. Apr. 6, 2021)).

## IV.   ALJ Porter's Findings

In his order, ALJ Porter properly articulates and follows the five-step sequential evaluation process for determining disability. See 20 CFR

§ 416.920(a). In doing so, ALJ Porter made the following findings (finding in

bold):

**1.     The claimant has not engaged in substantial gainful activity since December 28, 2020, the application date (20 CFR 416.971 et seq.).**

Plaintiff worked after the application date, but earnings from such work

activity did not rise to the level of substantial gainful activity. Tr. 12.

This issue is not in dispute.

**2.     The claimant has the following severe impairments: avascular necrosis of the hips requiring replacement surgery, degenerative changes of the low back and right hand, depressive disorder, anxiety disorder, bipolar disorder, and substance abuse (20 CFR 416.920(c)).**

The above medically determinable impairments significantly limit the

ability to perform basic work activities as required by SSR 85-28. Tr. 12.

This issue is not in dispute.

**3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

This issue is not in dispute.

ALJ Porter concluded that although Plaintiff has "severe" impairments,

they do not meet the criteria of any listed impairments described in Appendix

1 of the Regulations (20 CFR, Subpart P, Appendix 1). No treating or

examining physician mentioned findings equivalent in severity to the criteria

of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment in the Listing of Impairments. Tr. 13.

ALJ Porter likewise concluded that the severity of Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, ALJ Porter considered whether the "paragraph B" criteria were satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering, or applying information, ALJ Porter concluded that Plaintiff has moderate limitation. Tr. 13. At the hearing, Plaintiff testified that he could follow four-step instructions if they are written down. Tr. 64. At a May 2021 consultative psychological examination, no memory deficits were present. Plaintiff's fund of knowledge appeared below average; and his overall intellectual ability was judged to be in the borderline range. His thought content appeared appropriate to mood and

circumstances. His thought processes appeared logical. Tr. 683-89. The record does not demonstrate significant cognitive deficits. Tr. 13

As to interacting with others, ALJ Porter found that Plaintiff has moderate limitation. At the hearing, Plaintiff testified that he keeps to himself and his wife because he does not get along with other people. He attends church every other Sunday and does some volunteer work. People come to visit, but he does not want too many people visiting because of the pandemic. At his May 2021 consultative psychological examination, he indicated that he visited with friends and family routinely. His social maturity was appropriate. Tr. 13, 686. The record does not establish significant difficulty interacting with other people.

With regard to concentrating, persisting, or maintaining pace, ALJ Porter found Plaintiff has moderate limitation. Tr. 13. At the hearing, Plaintiff testified that he is unable to follow a 30-minute television show. At his May 2021 consultative psychological examination, his attention to task and concentration appeared adequate Tr. 685. The evidence of record, as a whole, suggests that he experiences moderate difficulty concentrating, persisting, or maintaining pace as a result of the symptoms he experiences from mental impairment.

As for adapting or managing himself, ALJ Porter found that Plaintiff experienced moderate limitation. Tr. 13. At his May 2021 consultative psychological examination, Plaintiff's judgment appeared adequate; and his insight appeared fair. His decision-making skills appeared affected by pain distraction at times. He was responsible; and his coping ability appeared fair. Tr. 686. His mental symptoms suggest that he would experience some level of difficulty in adapting to workplace changes and would experience some difficulty managing his symptoms and controlling his moods but do not suggest the presence of significant limitations in this area.

ALJ Porter ultimately concluded that Plaintiff's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation; thus, the "paragraph B" criteria are not satisfied. Tr. 13.

ALJ Porter also considered whether the "paragraph C" criteria are satisfied. Tr. 14. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that Plaintiff has only marginal adjustment, that is, a minimal capacity to adapt to changes in Plaintiff's environment or to demands that are not already part of Plaintiff's daily life.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental

impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. ALJ Porter concluded that his proposed residual functional capacity assessment reflects the degree of limitation found in the "paragraph B" above mental function analysis.

**4.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with limitations. The claimant can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. The claimant can sit, stand, and walk for up to 6 hours each in a normal 8-hour workday. The claimant can use foot controls and hand controls no more than occasionally. The claimant can reach overhead no more than frequently and can handle, finger, and feel with the right upper extremity no more than frequently. The claimant can never crawl or climb ladders or scaffolds. The claimant can balance, stoop, and crouch no more than frequently. The claimant can kneel and climb ramps and stairs no more than occasionally. The claimant must avoid unprotected heights. The claimant is limited to the performance of simple tasks and making simple work-related decisions. The claimant should have no more than frequent interaction with supervisors and co-workers and should have no more than occasional interaction with the general public. Time off-task should be accommodated by normal breaks. The claimant requires a sit/stand option which allows for a change of position at least every 30 minutes. This is a brief positional change lasting no more than 3 minutes at a time with the claimant remaining at the workstation during the positional change.**

This issue is disputed.

ALJ Porter contends that he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the

objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p. Tr. 14. ALJ Porter considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c.

In considering Plaintiff's symptoms, ALJ Porter was required to follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce Plaintiff's pain or other symptoms. Tr. 14.

Second, once ALJ Porter identified an underlying physical or mental impairment(s) that could reasonably be expected to produce Plaintiff's pain or other symptoms, he was required to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, ALJ Porter was required to consider other evidence in the record to determine if Plaintiff's symptoms limit the ability to do work-related activities. Tr. 14-15.

ALJ Porter found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. ALJ Porter summarized Plaintiff's testimony at hearing:

> Plaintiff testified that he is currently 52 years old and the highest grade he completed in school was the 11th grade. He is right-handed. He does not have a valid driver's license. He has not worked since December 2020. He has had hip replacements in 2014 and 2016. He previously worked as a landscaper. He believes he is unable to work because of back issues and hip replacements. He has difficulty getting around, and he has good days and bad days. His spinal problems began in 2013 with a shot he was given for sciatica. He has problems from his neck to his low back. He has not had treatment apart from one injection. He is not taking any medication for his back or his neck. After hip surgery, he still has pain, and he walks with a limp because one side of his body is shorter than the other. His limp is on the left side. He can sit and stand for 30 minutes each. He can walk for half a block. His hip prevents him from standing or walking longer. He has memory problems, and he is forgetful. He can lift and carry no more than 5 pounds. He has constant daily pain and difficulty sleeping. His pain level is an 8 out of 10. He last took medications on a regular basis in 2016. He cannot follow a 30-minute television show. He stays to himself and his wife because he does not get along with other people. He has low self-esteem and is not the person he used to be since about 2014. He can follow 4-step instructions if they are written down. He uses a walker and a shower chair. He enjoys fishing but has not gone since 2019. He watches television and enjoys his grandchildren. He attends church every other Sunday and does some volunteer work. He uses a wheelchair when grocery shopping. His wife and son perform the household chores. People come to visit but he does not want too many people there because of the pandemic. He uses a heating pad and

> an ice pack for his pain. He has numbness and tingling in
> his hands, and he does not have a good grip.

Tr. 15.

However, ALJ Porter found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons he explained in his decision. Upon review of the relevant medical evidence of record addressing Plaintiff's severe impairments, ALJ Porter noted Plaintiff was given a consultative physical examination by Ravi Patel, D.O. in May 2021. Tr. 15; 674-82. Plaintiff reported a history of joint dysfunction, depression, and memory problems. Tr. 678. He indicated that he completed a home exercise regimen on a regular basis. Id. On examination, there was no midline or paraspinal tenderness, and bilateral sitting and supine straight leg raise testing was negative. Tr. 679. There was no extremity cyanosis or clubbing. Id. Upper and lower extremity joints had no significant swelling, erythema, effusion, or tenderness. Id. There was no crepitus. Id. He had mild difficulty getting up from the examination table. Id. His station was steady; and his gait was normal. Id. He was able to walk without using any type of assistive device. Id. He could perform tiptoe- and heel walking without assistance. Id. He could tandem walk without assistance. Id. He could squat and rise with effort. Id.

Case No.: 1:23-cv-22-MAF

His grip was 5/5 bilaterally. He was able to use a pen to write. Fine motor and dexterity skills were within normal limits. Id. He could tie a shoelace, button a shirt, and open and close a doorknob without assistance. Id. His muscle strength was 5/5 in all extremities; and there were no palpable muscle spasms. Id. His left leg was tingling to light touch. Id. His coordination was intact; and his balance was normal. Id. Limitation of motion was present in both shoulders and in the left hip. Id. Impressions were histories of depression, bilateral total hip arthroplasty, cocaine abuse, anxiety, arthritis, back pain, and subjective memory problems. Tr. 680. Dr. Patel opined that he had objective functional limitations with squatting, stooping, and traveling. Id. There were no objective functional limitations in other areas. He walked in with a cane but did not require a cane for safe ambulation. Id. ALJ Porter found Dr. Patel's opinion partly persuasive, as it was mostly consistent with many of the other objective examination findings of record. Tr. 16.

In May 2021, bilateral hip imaging showed status post bilateral hip replacement without fracture or dislocation. Right hand imaging showed no fracture dislocation. There was minimal joint space narrowing at the third MCP joint consistent with mild osteoarthritis. Tr. 16; 671-73.

In May 2021, Plaintiff was given a consultative psychological examination by Edd Easton-Hogg, Psy.D. Tr. 16; 683-89. He reported

problems with memory, depression, and pain. Tr. 684. He indicated that he was not currently under the care of a doctor and was not prescribed medication. Id. He had not been hospitalized for mental health reasons but had been in counseling a few times in the past. Tr. 685. Medical records indicated a history of cocaine and opiate abuse around 2015 and 2016. Id. Plaintiff denied having a substance abuse history or treatment for such. Id. He visited with friends and family routinely. Id. On mental status examination, he was alert and fully oriented; and his attention to task and concentration appeared adequate. Id. No deficits in memory were noted. Id. His performance on cognitive testing was variable. Id. His fund of knowledge appeared below average; and his overall intellectual ability was judged to be in the borderline range. Tr. 686. His affect was sad, and his mood was neutral. Id. His thought content was appropriate to mood and circumstances. He denied hallucinations. Id. His thought processes appeared logical. Id. His capacity for abstraction was intact, and he was able to interpret proverbs. Id. His judgment and reality testing appeared adequate. Id. His insight was fair, and his decision-making skills appeared affected by pain distraction at times. Id. His coping ability appeared fair, and his social maturity was appropriate. Id. He was identified as being responsible. Id. Diagnostic impressions were unspecified depressive disorder, rule out stimulant use disorder, and rule out

opioid use disorder. Id. Dr. Easton-Hogg opined that Plaintiff had mild limitation in performing simple tasks; mild limitation in sustaining concentration and having persistence to carry out simple instructions; mild limitation in responding appropriately to supervisors, coworkers, and the public; and moderate limitation in tolerating stress and the pressure of day-to-day employment. Tr. 687. Dr. Easton-Hogg opined that Plaintiff's prognosis for improvement was fair with mental health treatment and poor in the absence of treatment. Tr. 688. ALJ Porter considered this opinion partially persuasive, as it was not contradicted by other objective mental health evidence of record. Tr. 16.

In May 2021, Donald Morford, M.D. reviewed Plaintiff's medical records for the state agency and opined that he was capable of performing light exertional work with postural, manipulative, and environmental limitations. Tr. 75-90. In January 2022, Prianka Gerrish, M.D., reviewed Plaintiff's medical records for the state agency and opined that he was capable of performing a full range of medium exertional work. Tr. 104. ALJ Porter concluded that Dr. Morford's opinion was more persuasive in light of Plaintiff's history of bilateral hip replacement and examination findings of back stiffness and deficits in range of motion. Tr. 17.

Also in May 2021, J. Peterson, Ph.D., reviewed Plaintiff's medical records for the state agency and opined that his mental impairment was not severe in nature. Tr. 81-82. This opinion was affirmed by Nicholas Rios, Psy.D., in November 2021. Tr. 98-106. ALJ Porter found that these opinions were not persuasive, finding instead that Plaintiff's mental impairment caused more than a minimal effect on his ability to perform work-related mental activities, consistent with Dr. Easton-Hogg's finding of moderate limitation in tolerating stress and the pressure of day-to-day employment at his May 2021 consultative psychological examination. Tr. 80.

In December 2021, Plaintiff was given a consultative physical examination by Eftim Adhami, M.D. Tr. 17; 701-03. He reported a history of neck, lower back, and bilateral hip pain that radiated down both legs to the toes. He did not use any assistive devices. On examination, there were no lumbar paravertebral muscle spasms; and straight leg raise testing was normal bilaterally. Sensation was normal throughout the body; and deep tendon reflexes were normal. Muscle strength was 5/5 in all muscles, including grip strength in both hands. There was no muscle atrophy; and there were no abnormal movements like spasticity, rigidity, or tremor. The ability to pick up small objects and button clothes was preserved. His joints were free in movement, without signs of inflammation or fluid. His gait,

walking on heels and toes, and tandem walking were all normal. Range of motion of all joints and the spine were within normal limits. He had preserved range of motion in his hips, both of which had been replaced. He reported pain if he sat for 15 to 20 minutes or stood for 30 minutes to an hour. His back had some stiffness. Diagnoses were neck pain without physical findings, lower back pain with stiffness and x-rays being indicated, and pain in both replaced hips with x-rays being indicated to check for the condition of the joint and stability. Tr. 702. ALJ Porter found that this opinion is also in part persuasive, as it is generally consistent with most of the findings from Dr. Patel's May 2021 consultative physical examination. Tr. 17.

Also, in December 2021, lumbar spine imaging showed mild multilevel degenerative lumbar spondylosis. Bilateral hip imaging showed a stable examination without evidence of acute bony abnormality. Tr. 699.

Upon review of the medical evidence, ALJ Porter found that the evidence did not establish that Plaintiff's impairments were disabling in nature or prevented him from performing work in accordance with the residual functional capacity assessment set forth above. Plaintiff's examination findings were largely normal apart from back stiffness, limitation of motion in both shoulders and the left hip and tingling to light touch in the left leg; his most recent examination showed no limitation of motion and

normal sensation throughout the body. Plaintiff's gait had been normal; and he did not show a need for an assistive device to ambulate. His muscle strength was full at 5/5; and there was no indication of deficits in performing fine and gross manipulative tasks with his hands and fingers. Straight leg raise testing was negative; and diagnostic imaging was mild or minimal in degree and did not establish the presence of any condition that would be expected to prevent all work. ALJ Porter found that the record did not show medical treatment since 2017; and Plaintiff testified at the hearing that he last took medications on a regular basis in 2016. Tr. 17; 63.

With regard to mental impairment, ALJ Porter noted that the relevant record does not show mental health treatment and does not indicate the continued presence of symptoms of such severity as to prevent the performance of all work. As a result, the only objective mental health evidence of record is Plaintiff's consultative psychological examination, which indicates a diagnosis of depression and is, largely, normal apart from a sad affect and intellectual ability in the borderline range. The record does not show significant abnormalities and does not indicate significant difficulties with cognitive functioning, reality perception, memory deficits, attention and concentration, insight and judgment, violent ideations, or psychotic processes. Plaintiff's level of mental impairment appears to be no

more than moderate in degree. ALJ Porter contends that the residual functional capacity assessment set forth above contains restrictions on the type of work Plaintiff is able to perform and the social interaction he is able to engage in, and thus accounts for his mental limitations. Tr. 17.

ALJ Porter ultimately considered the combined effect of Plaintiff's impairments and the possibility that the combined effect would be greater than each of the impairments considered separately. Plaintiff's impairments were considered when assessing the claim under the listings and during the other steps of the sequential evaluation process, including when assessing Plaintiff's residual functional capacity. ALJ Porter concluded that the residual functional capacity assessment set forth above is supported by the objective medical evidence, including the medical opinions of record. He finds that while Plaintiff's impairments produce limitations, the objective evidence, as a whole does not suggest that such impairments render him unable to perform any work; and the limitations that do exist are adequately accommodated within his residual functional capacity assessment. Tr. 17.

5. **The claimant is unable to perform any past relevant work (20 CFR 416.965).**

This issue is not in dispute.

Plaintiff was previously employed as a landscape worker. That work was substantial gainful activity, was performed long enough for Plaintiff to

achieve average performance and was performed within the relevant period. Plaintiff was unable to perform this work, as the exertional requirements exceed those set forth in the residual functional capacity assessment above. Accordingly, Plaintiff was unable to perform past relevant work as actually or generally performed. Tr. 18.

**6. The claimant was born on December 21, 1969 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).**

This issue is not in dispute. Tr. 18.

**7. The claimant has a limited education (20 CFR 416.964).**

This issue is not in dispute. Tr. 18

**8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).**

This issue is not in dispute. Tr. 19.

9. **Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).**

This issue is disputed.

In determining whether a successful adjustment to other work can be made, ALJ Porter was required to consider Plaintiff's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If

Plaintiff can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon Plaintiff's specific vocational profile (SSR 83-11). When Plaintiff cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If Plaintiff has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision making (SSR 85-15).

If Plaintiff had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.10. However, Plaintiff's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, ALJ Porter asked the vocational expert whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual

would be able to perform the requirements of the following representative occupations:

| Representative Occupations | Dictionary of Occupational Titles (D.O.T.) | Stength/Skills/SVP | Jobs in National Economy |
|---|---|---|---|
| Housekeeping Cleaner | 323.687-014 | Light/Unskilled/2 | 200,000 |
| Inspector | 741.687-010 | Light/Unskilled/2 | 100,000 |
| Packager | 559.687-074 | Light/Unskilled/2 | 60,000 |

Pursuant to SSR 00-4p, ALJ Porter determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Tr. 19.

ALJ Porter concluded, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Tr. 69-71. He, therefore, found that a finding of "not disabled" is appropriate under the framework of the above-cited rule. Tr. 20.

**10. The claimant has not been under a disability, as defined in the Social Security Act, since December 28, 2020, the date the application was filed (20 CFR 416.920(g)).**

This issue is disputed.

ALJ Porter concluded that, based on the application for supplemental security income protectively filed on December 28, 2020, Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 20.

## V.    Plaintiff's Claims

### ALJ Porter Failed to Properly Evaluate
### Plaintiff's Subjective Complaints

Plaintiff contends that ALJ Porter merely provided boilerplate, conclusory statements regarding Plaintiff's subjective complaints, but did not provide a legally sufficient explanation regarding why Plaintiff's subjective complaints were undermined by the evidence. ECF No. 14, p. 9. According to Plaintiff, ALJ Porter erred in doing so, and was instead required to provide "explicit and adequate reasons for doing so" as would be required under controlling cases. Sampson v. Comm'r of Soc. Sec., 694 F. App'x 727, 740 (11th Cir. 2017) (citing Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). Because Plaintiff believes ALJ Porter made no explicit finding, he contends that "the implication must be obvious to the reviewing court." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995)). Plaintiff does not believe this is the case here.

Plaintiff recognizes that ALJ Porter considered Plaintiff's subjective complaints: difficulty getting around; limitation of sitting or standing only 30

minutes at a time; memory problems; difficulty being around people; use of a walker and shower chair; using a wheelchair when grocery shopping; and numbness and tingling in his hands with grip problems. ECF No. 14, pp. 9-10; Tr. 15. Plaintiff also reported other subjective complaints: pain in his hips and spine that is constant (Tr. 285); difficulty getting in and out of his bathtub (Tr. 289); poor sleep due to pain (Tr. 289); trouble raising his arms (Tr. 289); walking with a cane (Tr. 291); inability to lift more than ten pounds (Tr. 293); inability to walk one or two blocks before needing to rest (Tr. 293) and, the inability to handle stress or changes in routine. Tr. 294.

Plaintiff goes on to challenge ALJ Porter's review and findings with respect to the medical opinions. Specifically, Plaintiff believes that ALJ Porter's finding that none of the opinions were particularly persuasive leaves ALJ Porter with no basis for rejecting Plaintiff's subjective complaints. ECF No. 14, p. 10. In fact, Plaintiff believes that ALJ Porter's ambiguous explanation here does not allow this Court to "meaningfully review what portions of the opinion he found persuasive, what were rejected, and certainly does not shed light on why this opinion would undermine Plaintiff's subjective complaints." ECF No. 14, p. 11. Plaintiff contends that error applies to Dr. Patel, Dr. Easton-Hogg, Dr. Morford, Dr. Gerrish, the state agency mental health consultants, and Dr. Adhami. By not specifically tying

his review of these opinions to the evidence – whether it be for consistency or supportability – ALJ Porter fails to provide any basis for rejecting Plaintiff's subjective complaints. ECF No. 14, pp. 11-14.

Plaintiff contends that ALJ Porter fails to specifically link his rejection of Plaintiff's subjective complaints to the evidence. As a result, that decision is ambiguous at best, and is certainly not "explicit, "adequate," or "obvious." ECF No. 14, p. 14. Plaintiff asserted he could not lift more than ten pounds, could not sit or stand more than thirty minutes, and could not walk more than a block. Such limitations would prevent him from anything above a sedentary level of activity. Plaintiff believes that ALJ Porter's failure to properly evaluate the opinion evidence prevents a meaningful review of why Plaintiff's subjective complaints were rejected. Therefore, absent a logical bridge between the evidence and the resulting conclusion, remand would be required. ECF No. 14, pp. 14-15.

## VI.    Commissioner's Response

The Commissioner contends that ALJ Porter properly considered the objective medical evidence and Plaintiff's treatment history from the relevant period and found that the evidence did not support Plaintiff's claim of disabling symptoms and limitations. Further, ALJ Porter properly evaluated the medical opinions of record, providing further support for his assessment of Plaintiff's

subjective complaints. In fact, Plaintiff fails to show what evidence, aside from his subjective allegations, proved he had limitations of such severity that precluded him from performing other work in the national economy. Thus, according to the Commissioner, substantial evidence supports ALJ Porter's determination that Plaintiff is not disabled.

### ALJ Porter Properly Evaluated Plaintiff's Subjective Complaints

The Commissioner argues that in assessing Plaintiff's subjective complaints of disabling symptoms, ALJ Porter considered the objective medical findings, Plaintiff's conservative treatment history, and the medical opinions. Tr. 15-18. ALJ Porter found the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical and other evidence of record. Tr. 15. In fact, ALJ Porter gave Plaintiff the benefit of the doubt by restricting his RFC to a reduced range of light work with additional limitations, including a sit/stand option allowing for a change of position at least every 30 minutes, among other restrictions. Tr. 14. The Commissioner contends that Plaintiff has not shown any legal error in ALJ Porter's decision.

In contrast to Plaintiff's subjective allegations of disabling symptoms, ALJ Porter cited medical evidence suggesting that Plaintiff's symptoms were not as severe as alleged. Tr. 15-18. See 20 C.F.R. § 416.929(c)(2)

("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect of those symptoms, such as pain, may have on your ability to work"). In May 2021, Plaintiff underwent a consultative physical examination performed by Ravi Patel, D.O. Tr. 15; 678-80. On examination, Plaintiff had no midline or paraspinal tenderness; and his bilateral sitting and supine straight leg raise testing was negative; his upper and lower extremity joints showed no significant swelling, erythema, effusion, or tenderness; and there was no crepitus. Plaintiff had mild difficulty getting up from the examination table but had a normal gait. Plaintiff's station was steady; he was able to walk without using any assistive device, and he could tiptoe, heel walk, and tandem walk without assistance. Plaintiff could squat and rise with effort; demonstrated 5/5 grip strength in both hands; displayed 5/5 strength, intact coordination, and normal balance, and had no palpable muscle spasms. Plaintiff had reduced range of motion in both shoulders and the left hip, but he displayed normal range of motion of his neck, lower back, elbows, wrists, hands, knees, ankles, and right hip. Tr. 15-16; 675-77, 679.

ALJ Porter also discussed Plaintiff's December 2021 consultative physical examination conducted by Eftim Adhami, M.D., which similarly revealed normal findings. Tr. 17; 701-02. Dr. Adhami noted that Plaintiff did

not use any assistive devices; had no paravertebral muscle spasms of the lower back, and his straight leg raise testing was normal bilaterally. Plaintiff demonstrated normal sensation, normal deep tendon reflexes, 5/5 strength, no muscle atrophy, and no abnormal movements, such as spasticity, rigidity, or tremors. Plaintiff was able to freely move his joints, showing no signs of inflammation or fluid. Plaintiff's range of motion testing was normal for all joints and his spine; and his gait, heel-and-toe walk, and tandem walk were all normal. Tr. 17; 701-02.

Plaintiff's May 2021 imaging of the right hand showed no fracture or dislocation, and minimal joint space narrowing in the third metacarpophalangeal ("MCP") joint, consistent with mild osteoarthritis. Tr. 16; 673. His bilateral hip imaging from December 2021 showed a stable examination without any evidence of an acute bony abnormality. Tr. 17; 700. Plaintiff's December 2021 lower back imaging showed mild multilevel degenerative lower back spondylosis. Tr. 17; 699.

With respect to Plaintiff's mental health conditions, ALJ Porter discussed the May 2021 consultative psychological examination performed by Edd Easton-Hogg, Psy.D. Tr. 16; 684-87. ALJ Porter noted that, on examination, Plaintiff was alert and oriented; and he showed adequate concentration and attention to task. Tr. 16; 685. He did not show any deficits

in memory; and his overall intellectual ability was in the borderline range. Tr. 16; 685-86. He demonstrated appropriate thought content, logical thought processes, intact capacity for abstraction, adequate judgment, and fair insight, although he had a sad affect and a neutral mood. Tr. 16; 686. His decision-making skills appeared to be affected by pain distraction at times. Tr. 16; 686. He also showed fair coping ability and appropriate social maturity. Tr. 16; 686. The objective medical evidence supports ALJ Porter's findings that Plaintiff's subjective complaints were not entirely consistent with the record.

ALJ Porter further considered Plaintiff's conservative treatment history in evaluating his subjective complaints. Tr. 17-18. The regulations permit the ALJ to consider a claimant's treatment history, including the nature of the treatment and the type, dosage, effectiveness, and side effects of medications. 20 C.F.R. § 416.929(c)(3). ALJ Porter noted that the record does not show medical treatment since 2017; and Plaintiff testified at the hearing that he last took medications on a regular basis in 2016. Tr. 17; 63. ALJ Porter also noted that, during his consultative psychological examination, Plaintiff reported he "was in counseling a few times in the past," and he had not been hospitalized for mental health reasons. Tr. 16; 685. Considering the objective medical evidence and Plaintiff's self-reported lack

of treatment, the Commissioner contends that substantial evidence supports ALJ Porter's findings regarding Plaintiff's subjective complaints.

Contrary to Plaintiff's contention, ALJ Porter properly considered the medical opinion evidence, which does not support Plaintiff's complaints of disabling limitations. Specifically, in May 2021, consultative examiner Dr. Patel opined there were "**no functional limitations**" in the areas of bending, lifting, carrying, twisting, sitting, standing, walking, reaching, handling, feeling, grasping, finger manipulation, vision, hearing, speech, comprehension, following directions, or relating to others. Tr. 16; 680. Dr. Patel's opinion contradicts Plaintiff's subjective complaint that he could lift no more than ten pounds and could not sit or stand for more than thirty minutes. Tr. 16; 680. ECF No. 14, p. 14. While Dr. Patel also stated that "[t]here are objective functional limitations noted with squatting, stooping, and traveling" (Tr. 16; 680), he did not identify specific functional limitations with respect to Plaintiff's ability to squat, stoop, and travel. See 20 C.F.R. § 416.913(a)(2) (a "medical opinion is a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) **and** whether [he has] one or more impairment-related limitations or restrictions in" the ability to perform the physical, mental, or other demands of work activities and adapting to environmental conditions) (emphasis added). ALJ Porter

considered Dr. Patel's opinion and found that opinion was "in part persuasive, as it is mostly consistent with many of the other objective examination findings of record." Tr. 16; 680. As noted by ALJ Porter, Dr. Patel's examination of Plaintiff was largely within normal limits. Tr. 15-16; 679. While Plaintiff had reduced range of motion of the shoulders and left hip and had "mild" difficulty getting up from the examination table, the remainder of his examination was unremarkable. Tr. 15-16; 675-77; 679.

ALJ Porter also discussed the findings from Dr. Adhami's December 2021 consultative examination, which were largely within normal limits. Tr. 17; 701-02. As discussed above, Dr. Adhami noted Plaintiff had a normal straight leg raising test bilaterally, normal sensation, 5/5 muscle strength, fully functional cranial nerves, and normal range of motion of all joints and the spine. Tr. 17; 702. ALJ Porter reasonably accommodated Dr. Patel's opinion in the RFC assessment by finding that Plaintiff could: perform a reduced range of light work; could never crawl or climb ladders or scaffolds; and could balance, stoop, and crouch no more than frequently, among other limitations. Tr. 14.

In his discussion of Dr. Adhami's examination findings, ALJ Porter stated that he found Dr. Adhami's "opinion" to be "in part persuasive" because it was generally consistent with Dr. Patel's May 2021 examination

findings. Tr. 17. The Commissioner concedes that Dr. Adhami did not provide a medical opinion. Specifically, Dr. Adhami did not provide a statement about what Plaintiff could still do and whether he had limitations in performing the physical, mental, or other demands of work. <u>See</u> 20 C.F.R. § 416.913(a)(2) (defining "medical opinion"). Because Dr. Adhami did not provide a medical opinion, as defined by the regulations, there was no requirement on ALJ Porter to assess the persuasiveness of Dr. Adhami's findings. <u>See</u> 20 C.F.R. § 416.920c(c).

However, any misstatement by ALJ Porter in describing Dr. Adhami's report and findings as an "opinion" is harmless. ALJ Porter accurately discussed the examination findings from Dr. Adhami's report. Tr. 17; 701-02. Dr. Adhami's examination findings were generally consistent with the findings from Dr. Patel's consultative examination (Tr. 15-17, 679, 701-02). In turn, Dr. Adhami's report supported ALJ Porter's determination that Plaintiff did not have symptoms or limitations that were of disabling severity.

In addition, ALJ Porter properly considered the prior administrative medical findings of Donald Morford, M.D., and Prianka Gerrish, M.D., who reviewed the evidence of record in May 2021 and January 2022, respectively. Tr. 16; 83-87; 103-04. <u>See</u> 20 C.F.R. § 416.913(a)(5) (defining "prior administrative medical finding"). Dr. Morford opined that Plaintiff could

perform light work with postural, manipulative, and environmental limitations. Tr. 16; 83-86. Dr. Gerrish opined that Plaintiff could perform a full range of medium work, which is notably less restrictive than Dr. Morford's opinion. Tr. 16; 103-04. ALJ Porter found the prior administrative medical finding of Dr. Morford more persuasive than that of Dr. Gerrish "in light of [Plaintiff's] history of bilateral hip replacement and examination findings of back stiffness and deficits in range of motion." Tr. 16-17; 83-86; 675-79. ALJ Porter accommodated Dr. Morford's opinion by finding Plaintiff had the RFC to perform a reduced range of light work. Tr. 14. Neither Dr. Morford nor Dr. Gerrish's opinion supports Plaintiff's subjective allegation that he could perform only sedentary work. Tr. 83-87; 103-04. ECF No. 14, p. 14.

With respect to Plaintiff's mental functional limitations, ALJ Porter considered the opinion of the consultative psychological examiner, Dr. Easton-Hogg. Tr. 16; 687. Dr. Easton-Hogg opined that Plaintiff's ability to understand and remember instructions in performing simple tasks, sustaining concentration and having persistence to carry out simple tasks, and responding appropriately to supervisors, coworkers, and the public were affected by his symptoms and impairments to a **mild** degree. Tr. 16; 687. Dr. Easton-Hogg further opined that Plaintiff's ability to tolerate stress and the pressure of day-to-day employment was affected by impairments to a

**moderate** degree. Tr. 16; 687. Dr. Easton-Hogg further noted that an individual with a mild limitation in a functional area could generally function well in that area and that an individual with a moderate limitation in a functional area would still be able to function satisfactorily. Tr. 687.

ALJ Porter expressly found Dr. Easton-Hogg's opinion "partially persuasive" as it was not contradicted by other objective mental health evidence of record. Tr. 16. As presented above, the findings from the consultative examination showed that Plaintiff was alert and fully oriented; showed adequate concentration and attention to task; below average fund of knowledge; and borderline range of intellectual ability. Tr. 16; 685-86. His thought content was appropriate to mood and circumstances; and he demonstrated logical thought processes, intact capacity for abstraction, adequate judgment, fair insight, fair coping ability, and appropriate social maturity. Tr. 16; 686. ALJ Porter reasonably accommodated Dr. Easton-Hogg's opinion by finding Plaintiff was limited to performing simple tasks and making simple work-related decisions; and he could have no more than frequent interactions with supervisors and coworkers, and no more than occasional interactions with the general public. Tr. 14.

ALJ Porter further considered the prior administrative medical finding of J. Peterson, Ph.D., who reviewed the evidence in May 2021, and opined that

Plaintiff did not have a severe mental impairment. Tr. 17; 82. As noted by ALJ Porter, Dr. Peterson's opinion was affirmed by Nicholas Rios, Psy.D., in November 2021. Tr. 17; 102. ALJ Porter found these opinions were not persuasive. Tr. 17. However, ALJ Porter found that Plaintiff's mental impairment caused more than a minimal effect on his ability to perform work-related mental activities, consistent with Dr. Easton-Hogg's finding of moderate limitation in tolerating stress and the pressure of day-to-day employment. Tr. 17. Accordingly, ALJ Porter found Plaintiff had severe mental impairments of depressive disorder, anxiety disorder, and bipolar disorder; and he incorporated reasonable mental work-related limitations in the RFC assessment. Tr. 12; 14.

The Commissioner contends that although Plaintiff disagrees with how ALJ Porter evaluated his subjective complaints, Plaintiff failed to meet his burden of showing that the evidence of record warranted more restrictive functional limitations than those found by ALJ Porter. Even if Plaintiff complains that ALJ Porter did not detail every individual finding or statement from every examination, this level of detail is not required. See Dyer, 395 F.3d at 1210. Although ALJ Porter concluded that Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence of record (Tr. 15), he did not doubt that

Plaintiff experienced some significant symptoms and accommodated for those symptoms in the RFC finding by finding Plaintiff could perform reduced range of light work. Tr. 14. Plaintiff simply fails to establish ALJ Porter's analysis was not supported by substantial evidence.

## VII.   Legal Analysis

ALJ Porter provided a comprehensive and exhaustive review of Plaintiff's entire medical record. The question for this Court, on review, is whether ALJ Porter's decision is supported by substantial evidence. Because this Court finds that substantial evidence does support ALJ Porter's decision, that Order is affirmed.

ALJ Porter was not required to merely accept the subjective complaints from Plaintiff that he was plagued by pain and other symptoms which would preclude him from performing the jobs identified by the VE. Instead, ALJ Porter was required to consider those complaints in light of the other evidence of record and determine whether such subjective complaints were consistent with the other evidence of record.

In his Order, ALJ Porter discussed the subjective complaints offered by Plaintiff and compared them with the objective evidence. Tr. 15-18. That exhaustive review provided multiple pinpoint references to the record. The Eleventh Circuit has stated: "credibility determinations are the province of the

ALJ." <u>Moore</u>, 405 F.3d at 1212 ("The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole"). The credibility of Plaintiff's testimony must be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain. <u>Lamb v. Bowen</u>, 847 F.2d 698, 702 (11th Cir. 1988). Because ALJ Porter did not credit subjective pain testimony where such testimony is critical, he was required to articulate specific reasons for questioning Plaintiff's credibility. <u>See</u> <u>Wilson</u>, 284 F.3d at 1225. There could be no argument here that ALJ Porter failed to consider the entire record; he cites to almost every document in the record. Having reviewed that record and considered whether there was a consistency between the record and Plaintiff's subjective complaints, ALJ Porter completed the task assigned to him in this case. This Court will not – indeed cannot – merely substitute its opinion for that of ALJ Porter and reach a contrary decision. "A clearly articulated finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." <u>Foote</u>, 67 F.3d at 1562.

Plaintiff contends that ALJ Porter failed to credit any of the medical opinions, finding none of them "particularly persuasive." ECF No. 14, p. 10. This is inaccurate. ALJ Porter evaluated each of the opinions and afforded each of them the deference he deemed appropriate, based on his review of

the other evidence of record. Instead of rejecting the opinions, he found them to be "partially" or "in part" persuasive. See Tr. 16 (finding Dr. Patel's opinion "in part persuasive, as it is mostly consistent with many of the other objective examination findings of record"); Id. (finding Dr. Easton-Hogg's opinion "partially persuasive, as it is not contradicted by other objective mental health evidence of record"); Tr. 16-17 (comparing Dr. Morford's and Dr. Gerrish's opinions and finding that Dr. Morford's opinion is "more persuasive in light of Plaintiff's history of bilateral hip replacement and examination findings of back stiffness and deficits in range of motion"); Tr. 17 (rejecting Dr. Peterson's and Dr. Rios' opinion that Plaintiff's mental impairment was not severe in nature as "not persuasive" because it was inconsistent with Dr. Easton-Hogg's finding of moderate limitations in tolerating stress and the pressure of day-to-day employment). ALJ Porter was not required to absolutely accept or reject any particular opinion; he was only required to consider the opinion, compare it to the evidence and opinions of record, and give it such deference as he deemed appropriate based on the evidence. That is what he did.

Plaintiff has not pointed to any evidence other than his own subjective complaints which would support a contrary result. The burden of proving disability always rests with Plaintiff. See 20 C.F.R. § 416.912; Carnes

v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). There were no medical or mental health opinions cited by Plaintiff which would undermine ALJ Porter's decision. In fact, in order to conclude that Plaintiff was disabled, ALJ Porter would have been required to ignore the evidence and opinions and reach a contrary result despite the evidence of record. That would have been wholly inappropriate.

Because ALJ Porter reviewed the entire record, and that review is not inaccurate, Plaintiff cannot contend that the evidence at issue should be read differently or given different weight to justify a different decision. ALJ Porter had a duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). Even if this Court disagrees with ALJ Porter's resolution of the factual issues and would resolve those disputed factual issues differently, ALJ Porter's decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. See Baker o/b/o Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989). In this case, substantial evidence and proper legal analysis supports ALJ Porter's decision that Plaintiff was not disabled. The question is not whether this Court would reach a different decision on the same evidence, or whether the evidence here actually preponderates a different result, but, rather, whether

there is sufficient evidence here to confirm that substantial evidence supports ALJ Porter's decision. <u>Phillips</u>, 357 F.3d at 1240 n.8 ("[i]f the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it"); <u>see also</u> <u>Viverette v. Comm'r of Soc. Sec.</u>, 13 F.4th 1309, 1314 (11th Cir. 2021). There is no doubt that ALJ Porter's decision is so supported.

## VII.   CONCLUSION

For the reasons stated above, considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law. Accordingly, the decision of the Commissioner to deny Plaintiff's application for Social Security disability benefits is **AFFIRMED**. Plaintiff's Complaint and Memorandum in Support of the Complaint are **DENIED**. The Clerk shall correct the docket to reflect the name of the Defendant. The Clerk **SHALL ENTER JUDGMENT FOR THE DEFENDANT AND CLOSE THE FILE.**

**DONE AND ORDERED** on March 19, 2024.

<u>**s/ Martin A. Fitzpatrick**       </u>
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**